COMMONWEALTH of Pennsylvania, Appellee

v.

Andre Rene MOBLEY, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 1, 2010.
Filed Jan. 14, 2011.

Joshua R. Roberts, Public Defender, Suzanne M. Swann, Chief Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney and Francesco L. Nepa, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: BOWES, LAZARUS, and FREEDBERG, JJ.

OPINION BY BOWES, J.:

Andre Rene Mobley appeals from the judgment of sentence of six months probation and a concurrent sentence of ten days intermediate punishment imposed by the trial court following his conviction of 75 Pa.C.S. § 3802(a)(1), driving under the in-

fluence ("DUI") general impairment.[1] We affirm.

At approximately 1:00 a.m. on June 1, 2008, Officer Mark Johnson of the Rankin Police Department, while on routine patrol in a marked police cruiser, observed Appellant fail to come to a complete stop at a stop sign. Officer Johnson effectuated a traffic stop and when he approached Appellant's vehicle detected the odor of alcohol emanating from the car. In addition, he observed that Appellant's speech patterns were slow and that he appeared disoriented. Appellant was unable to provide his driver's license and Officer Johnson asked that he alight from the automobile. Upon Appellant's exit, the officer again noticed the smell of alcohol permeating Appellant. Accordingly, Officer Johnson requested a backup officer to conduct field sobriety tests.

Officer Kenneth Nicols responded to the call and arrived at the scene within minutes. He then administered four field sobriety tests: the finger dexterity test, the finger-to-nose test, the nine-step-walk-and-turn test, and the alphabet test. Appellant failed each one, and the officers placed Appellant under arrest and transported him to UPMC Braddock for a blood alcohol test. Officer Nicols administered *O'Connell* warnings[2] to Appellant and instructed him about the ramifications of a blood test refusal. Appellant, nevertheless, refused to submit to the blood test claiming a fear of needles. Subsequently, the trial court concluded that Appellant

was guilty of two counts of DUI—general impairment. Appellant filed a post-sentence motion that was denied, and this timely appeal followed.

The trial court directed that Appellant file a Pa.R.A.P.1925(b) concise statement of errors complained of on appeal. Appellant complied and the trial court authored its 1925(a) opinion. He now raises the following issue for our consideration.

I. Was the evidence adduced by the Commonwealth sufficient to prove beyond a reasonable doubt that on the night in question Mr. Mobley was rendered incapable of safely operating a motor vehicle because of alcohol consumption?

Appellant's brief at 4.

■ Our standard of review for a sufficiency claim is well settled:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to be-

---

1. In addition, Appellant was convicted of the summary offenses of driving while operating privileges suspended or revoked and intersections controlled by signs. He does not challenge those convictions.

2. In *Commonwealth v. O'Connell*, 521 Pa. 242, 555 A.2d 873, 878 (1989), our Supreme Court held:

where an arrestee requests to speak to or call an attorney, or anyone else, when re-

quested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

lieve all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa.Super.2010) (internal quotations and citations omitted).

Appellant concedes that he was in physical control of the vehicle and does not challenge the finding that he drove his car after consuming alcohol; rather, he maintains that the trial court incorrectly concluded that there was sufficient evidence presented to establish that he was incapable of safe driving. In support of that contention, Appellant argues that the Commonwealth's evidence failed to reflect that he operated his vehicle in an unsafe manner. He submits that the evidence indicates that he was not driving erratically or out of control nor was he "belligerent, confused, staggering, swaying or physically incapacitated in any way." Appellant's brief at 16. Further, he argues that his eyes were not glassy or bloodshot nor was he slurring his speech.

Lastly, Appellant maintains that he did not fail the field sobriety tests due to swaying, staggering, or a loss of coordination. Appellant points out that he failed the walk-and-turn test as the result of having "an unspecified amount of space between his heel and toe." *Id.* In addition, Officer Nicols deemed him to have failed the finger-to-nose test because he confused his right and left hands. With respect to the finger-dexterity test, Appellant notes that he failed that test as a result of reciting an incorrect number when touching his thumb to his fingers.

The Commonwealth replies that the circumstantial evidence in the instant case is sufficient to prove that Appellant was incapable of safe driving. In leveling its argument, the Commonwealth points out that Appellant failed to stop at a stop sign despite Officer Johnson's marked police vehicle being in full view as Appellant approached the stop sign. Further, he failed four field sobriety tests, including being unable to recite, rather than sing, the alphabet. According to the Commonwealth, these factors, "coupled with the strong odor of alcohol coming from his person, his disorientation as the officer approached him, his slowed speech and his refusal to submit to a chemical test," support the trial court's conclusion that Appellant was incapable of safe driving. We agree.

■■■ In order to be found guilty of DUI—general impairment, an individual's alcohol consumption must substantially impair his or her ability to safely operate a vehicle. *Commonwealth v. Palmer*, 751 A.2d 223 (Pa.Super.2000). Evidence of erratic driving is not a necessary precursor to a finding of guilt under the relevant statute. The Commonwealth may prove that a person is incapable of safe driving through the failure of a field sobriety test. *Id.; see also Commonwealth v. Smith*, 831 A.2d 636 (Pa.Super.2003). Herein, Appellant failed four separate field sobriety tests, smelled of alcohol, and proceeded to coast through a stop sign despite a police officer being in plain view. This evidence viewed in a light most favorable to the Commonwealth cannot be considered so weak and inconclusive that no probability of fact can be drawn from the circumstances. Accordingly, Appellant's sufficiency claim must fail.

■ We write further, however, to address the fact that the trial court convicted Appellant of two separate counts of DUI—general impairment arising out of the same incident, with one count alleging Appellant refused the breath/blood test.[3] The refusal of a blood alcohol content ("BAC") test is not a separate element under 75 Pa.C.S. § 3802; rather, those who refuse a BAC test must be charged pursuant to 75 Pa.C.S. § 3802(a)(1), general impairment.[4] Since refusal of a breath/blood test is not an element of the criminal offense that pertains to guilt, the court should not have convicted Appellant of the same criminal offense, DUI—general impairment, arising out of the identical criminal episode.[5] Instead, Appellant should have been convicted of one count of DUI—general impairment and been subject to the sentencing enhancement provided by statute relative to a blood or breath test refusal. *See* 75 Pa.C.S. § 3803(b)(2)(4); 75 Pa.C.S. § 3804(c).[6]

■ It is well established that a breath/blood test refusal is civil in nature and not a criminal offense and does not require

3. Appellant was originally charged with only one count of violating 75 Pa.C.S. § 3802(a)(1). However, the Commonwealth filed a criminal information containing two counts of the identical crime, with one of the counts adding that he refused a blood test.

4. 75 Pa.C.S. § 3802(a)(1) provides:

§ 3802. Driving under influence of alcohol or controlled substance
(a) General impairment.—
(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

5. This is in contrast to those cases where a BAC is obtained and the person is charged with both general impairment and either 75 Pa.C.S. § 3802(b) or § 3802(c).

6. 75 Pa.C.S. § 3803(b) states in pertinent part:

(b) Other offenses.—
. . . .
(2) An individual who violates section 3802(a)(1) where the individual refused testing of blood or breath, or who violates section 3802(c) or (d) and who has no prior offenses commits a misdemeanor for which the individual may be sentenced to a term of imprisonment of not more than six months and to pay a fine under section 3804.
. . . .

(4) An individual who violates section 3802(a)(1) where the individual refused testing of blood or breath, or who violates section 3802(c) or (d) and who has one or more prior offenses commits a misdemeanor of the first degree.
75 Pa.C.S. § 3804(c) reads:
§ 3804. Penalties
(c) Incapacity; highest blood alcohol; controlled substances.—An individual who violates section 3802(a)(1) and refused testing of blood or breath or an individual who violates section 3802(c) or (d) shall be sentenced as follows:
(1) For a first offense, to:
(i) undergo imprisonment of not less than 72 consecutive hours;
(ii) pay a fine of not less than $1,000 nor more than $5,000;
(iii) attend an alcohol highway safety school approved by the department; and
(iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.
(2) For a second offense, to:
(i) undergo imprisonment of not less than 90 days;
(ii) pay a fine of not less than $1,500;
(iii) attend an alcohol highway safety school approved by the department; and
(iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.
(3) For a third or subsequent offense, to:
(i) undergo imprisonment of not less than one year;
(ii) pay a fine of not less than $2,500; and
(iii) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

*Miranda* warnings. *See Commonwealth v. O'Connell,* 521 Pa. 242, 555 A.2d 873, 877 (1989) ("requests to submit to blood and breath tests are civil proceedings and that the right to consult with an attorney before taking the test is not recognized in Pennsylvania."). Indeed, *O'Connell* warnings are given, and not *Miranda* warnings, precisely because a breath/blood test refusal is not a criminal element or offense. This Court recently expounded upon the distinction between the elements of a crime and the factors related to the grading of an offense.

When the judiciary is required to resolve an issue concerning the elements of a criminal offense, its task is fundamentally one of statutory interpretation, and its overriding purpose must be to ascertain and effectuate the legislative intent underlying the statute." *Commonwealth v. Booth,* 564 Pa. 228, 233, 766 A.2d 843, 846 (2001); *see also* Section 1921(a) of the Statutory Construction Act of 1972(Act), 1 Pa.C.S. § 1921(a) (providing in relevant part: "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."). Generally, the clearest indication of legislative intent is the plain language of the statute itself. *Commonwealth v. Davidson,* 595 Pa. 1, 32, 938 A.2d 198, 216 (2007). As we have stated:

To determine the meaning of a statute, a court must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. It is only when the words of the statute are not explicit on the point at issue that resort to statutory construction is appropriate. However, basic principles of statutory construction demand that when the words of a statute are clear and free

from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit, and legislative history may be considered only when the words of a statute are not explicit.

*Commonwealth v. Dellisanti,* 583 Pa. 106, 112, 876 A.2d 366, 369 (2005) (citing to Sections 1903 and 1921(b) and (c) of the Act, 1 Pa.C.S. §§ 1903, 1921(b) and (c)) (quotation marks and citation to case law omitted). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. § 1921(a).

*Commonwealth v. Shamsud–Din,* 995 A.2d 1224, 1228–1229 (Pa.Super.2010) (quoting *Commonwealth v. Fedorek,* 596 Pa. 475, 946 A.2d 93, 98 (2008)). Further, our Crimes Code specifically defines the elements of a criminal offense:

**"Element of an offense."** Such conduct or such attendant circumstances or such a result of conduct as:

(1) is included in the description of the forbidden conduct in the definition of the offense;

(2) establishes the required kind of culpability;

(3) negatives an excuse or justification for such conduct;

(4) negatives a defense under the statute of limitation; or

(5) establishes jurisdiction or venue.

18 Pa.C.S. § 103.

Instantly, § 3802(a)(1) provides, "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." In contrast, § 3804 delineates the applicable penalties to which a defendant is subject

when convicted of DUI. Thus, the plain language of the statutes demonstrates that a breath/blood test refusal does not affect a defendant's guilt or innocence. Rather, the breath/blood test refusal impacts upon the extent of the defendant's punishment. Additionally, both 75 Pa.C.S. § 1547(b)(2) and 75 Pa.C.S. § 1547(e) support this position. Section 1547(b)(2)(ii) states in pertinent part, "if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties)." Section 1547(e) reads:

(e) **Refusal admissible in evidence.**— In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

 Hence, it is evident that a breath/blood test refusal is not an element of DUI—general impairment. Nevertheless, *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and its progeny maintain that any fact which increases the maximum penalty, except a prior conviction, requires proof beyond a reasonable doubt, regardless of whether the fact is labeled as an element of the offense or a sentencing factor. *See*

*also Commonwealth v. Aponte,* 579 Pa. 246, 855 A.2d 800, 811 (2004) ("in cases where the fact which increases the maximum penalty is not a prior conviction and requires a subjective assessment, anything less than proof beyond a reasonable doubt before a jury violates due process."). Certainly, a refusal can result in changing both the grading of the general impairment offense and the sentence a person may receive; thus, a defendant must be put on notice of these possible enhancements. *See Aponte, supra* at 807–809; *Commonwealth v. Reagan,* 348 Pa.Super. 589, 502 A.2d 702, 705 (1985) *(en banc); see also Commonwealth v. Kearns,* 907 A.2d 649 (Pa.Super.2006).[7]

We observe that in the present case, the *Apprendi/Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)/*Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007) line of decisions, would not be implicated because the trial court, acting as the fact finder, concluded Appellant refused the breath test and Appellant's conviction was considered a first time DUI and the maximum sentence did not increase. *See* 75 Pa.C.S. § 3803(b)(2). Further, we remain cognizant that in the case of a jury trial, the verdict slip could simply inquire first whether the jury finds the defendant guilty or not guilty of DUI—general impairment. If the jury concludes that the defendant is guilty, it would next determine whether the individual refused the breath/blood test. Of course, where the refusal only operates to result in the imposition of a more severe mandatory minimum and does not alter the grading of the

7. Defendants who have previously been convicted of a DUI offense and subsequently are convicted of DUI—general impairment and refused breath/blood testing are guilty of a misdemeanor of the first degree. 75 Pa.C.S. § 3803(b)(4). In contrast, defendants who have a prior DUI conviction and are convicted of a later DUI not involving a breath/blood test refusal are guilty of a misdemeanor of the second degree. 75 Pa.C.S. § 3804(a)(2). A person whose first DUI conviction involves a breath/blood test refusal is guilty of an ungraded misdemeanor. 75 Pa.C.S. § 3803(b)(2).

offense, as was the case herein, the application of the mandatory minimum would not fall within the ambit of *Apprendi* or its progeny. *Commonwealth v. Kleinicke*, 895 A.2d 562 (Pa.Super.2006) (*en banc*).

The Commonwealth, in both an attempt to simplify the matter for trial judges as well as not run afoul of the *Apprendi* line of decisions, routinely files criminal informations that include two general impairment counts with one count alleging the breath/blood test refusal.[8] This occurred in the instant case. The result is that defendants are charged with a violation of § 3802(a)(1) twice. This permits the trial judge, if he finds no refusal, to find the defendant not guilty of the count alleging the refusal but to also conclude that the defendant is guilty of the remaining count.

■ However, a finding by the fact finder that the prosecution has not proven the factor causing the sentencing enhancement should not result in a not guilty verdict since it is not an element of the crime and has no bearing on his guilt or innocence of driving impaired. Rather, so long as the Commonwealth proves the elements of the substantive offense, where the defendant has not refused a breath/blood test, the defendant still must be adjudged guilty of either a misdemeanor of the second degree (if he has more than one prior DUI conviction) or an ungraded misdemeanor that permits a lesser mandatory minimum sentence. *Compare* 75 Pa.C.S. § 3803(a)(2) *with* 75 Pa.C.S. § 3803(a)(1); *see also* 75 Pa.C.S. § 3804 (distinguishing applicable punishments).[9] Thus, all that is necessary when charging DUI—general impairment where a breath/blood test refusal occurred

is that the Commonwealth file a criminal information that includes the single count of § 3802(a)(1) that subjects the defendant to the most serious punishment. *See e.g. Commonwealth v. Shamsud–Din*, 995 A.2d 1224 (Pa.Super.2010) (providing that trial court has subject matter jurisdiction to convict a defendant of a lesser graded simple assault not charged in the criminal information). Charging the identical criminal offense twice in the criminal information to indicate that one count is alleging that a breath test/blood test refusal transpired constitutes duplication of counts and creates possible double jeopardy implications if the individual is sentenced on each count. *See Commonwealth v. Williams*, 871 A.2d 254 (Pa.Super.2005). Nonetheless, since the trial court did not sentence Appellant on both counts herein, there is no violation of double jeopardy. *Commonwealth v. McCoy*, 895 A.2d 18 (Pa.Super.2006). Accordingly, we affirm.

Judgment of sentence affirmed.

---

8. The Commonwealth proceeds similarly in other cases that involve DUI and accidents.

9. A breath/blood test refusal does not automatically result in the grading of the offense being altered. Only where the individual has

previously committed a DUI offense is the offense graded more seriously. However, a breath/blood test refusal always will result in a harsher mandatory sentence. *Compare* 75 Pa.C.S. § 3804(a) with 75 Pa.C.S. § 3804(c).